**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| Sophie Doe and Nora Doe, <br><br> Plaintiffs, <br><br> v. <br><br> SNAP INC. <br><br> Defendant. | **Case No. 1:26-cv-00596** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. The dissemination of child sexual abuse material ("CSAM") has become a global scourge due to the portability of electronic visual content and the rise of online social media platforms that facilitate the creation and dissemination of such material.

2. This lawsuit seeks to shine a light on how social media company Snap Inc. ("Snap") facilitates and profits from child sexual exploitation and CSAM, choosing money over the safety of its young users and at the expense of human dignity.

3. Snap develops and operates Snapchat, a smartphone-based app released in September 2011.[1] Snapchat was founded by three Stanford college students. One of the co-founders, Evan Spiegel, who, thanks to Snapchat, became the world's youngest billionaire, remains CEO today.

---

[1] Biz Carson, *The Rise of Snapchat from a Sexting App by Stanford Frat Bros to a $3 Billion IPO*, BUS. INSIDER (Feb. 6, 2017 at 7.50 ET), https://www.businessinsider.com/the-rise-of-snapchat-from-a-stanford-frat-house-to-a-3-billion-ipo-2017-1.

4.        Snapchat's central and defining feature, the "Snap," allows users to create and exchange ephemeral or disappearing audiovisual messages.[2] Generally, Snapchat opens to a screen on which users can take photos or videos through the device's camera. Users may create content on Snapchat by taking photos or videos on this screen or by importing existing photos or videos from their smartphone devices.

5.        The product was developed because its founders wished to create a way to send photo messages that disappear shortly after the recipient opens them.[3] CEO Evan Spiegel acknowledged that Snapchat was partly inspired by former U.S. Representative Anthony Weiner's infamous sexting scandal and the desire to create an app with "expiring" data.[4] In short, Snap's design of its Snapchat product, especially its focus on ephemeral content, is uniquely suited to facilitate illicit conduct and to enable the creation and exchange of sexually explicit audiovisual content.

6.        In 2016, Snap introduced another Snapchat feature named "My Eyes Only." My Eyes Only is presented as a "hidden vault"[5] that stores Snaps and keeps them "extra private!"[6]  My Eyes Only encourages users to hide and save harmful and highly sensitive content in a special passcode-protected tab on Snapchat. Snap assures users that content saved in their My Eyes Only is kept "safe and encrypted, and protected."[7] Snap intentionally designed its app to make it easy for users to move their Snaps to My Eyes Only.[8]

---

[2]  Snap Inc., Registration Statement (Form S-1), at 1 (Feb. 2, 2017).
[3] *The History of Snapchat and The Future of Disappearing Photo Apps*,  FROZENFIRE, https://frozenfire.com/history-of-snapchat/.
[4] Billy Gallagher, *No, Snapchat Isn't About Sexting, Says Co-Founder Evan Spiegel*, TECHCRUNCH (May 12, 2012 at 14:06 ET), https://techcrunch.com/2012/05/12/snapchat-not-sexting/.
[5] Claire Haiek, *The Snapchat Feature that all parents should know about*,  KIDSPOT (May 24, 2021 at 10:40 ET), https://www.kidspot.com.au/parenting/high-school/the-snapchat-feature-that-all-parents-should-know-about/news-story/c13714ad7716762861b2fff6eb39bd1f.
[6] *How Does My Eyes Only Work?, SNAP INC.*, https://help.snapchat.com/hc/en-us/articles/7012317537556-How-does-My-Eyes-Only-work.
[7] *Privacy by Product: Memories*, SNAP INC., https://values.snap.com/privacy/privacy-by-product/memories.
[8] *Introducing Memories*,  SNAP INC. (July 6, 2016), https://newsroom.snap.com/memories/.

7.      The design, marketing, and representation of My Eyes Only encouraged users, including children, to not only create but also to save and store sexually explicit content on their Snapchat accounts. In fact, the company went so far as to guarantee to its users that content stored on Snapchat using My Eyes Only was so secure that "even if someone steals your device and logs in to Snapchat somehow, those private Snaps are still safe."[9]

8.      The logo accompanying Snapchat's My Eyes Only is also intentionally designed to reassure users that the feature provides heightened protection to user safety and privacy by equipping Snapchat's iconic original brand logo "Ghostface Chillah"[10] with the addition of a safety helmet. *Compare* Figure 2 and Figure 1a infra. Snapchat then provides further reassurance and incentive for users to finish setting up My Eyes Only, including by displaying a graphic combining a shield (signifying defense) with a key (signifying privacy and control), symbolizing heightened cybersecurity, which goes hand-in-hand with Snap's representations and marketing that My Eyes Only is safe and private. *See* Figure 1b infra.

---

[9] *Privacy by Product: Memories*, SNAP INC. https://values.snap.com/privacy/privacy-by-product/memories.
[10] Megan Rose Dickey, *Here's One Thing You Didn't Know About Snapchat*, BUS. INSIDER (Jan. 2, 2013 at 17.22 ET), https://www.businessinsider.com/one-thing-you-dont-know-about-snapchat-2013-1.



*(Figure 1a and Figure 1b)*



*(Figure 2)*

9.      With over 900 million monthly active users, Snapchat is one of the world's most popular social media apps.[11] By Snap's own estimates, Snapchat has 100 million daily users in North America and reaches nearly half of all smartphone users in the United States.[12]

10.      This explosive growth is driven by Snapchat's key user demographic, 13 to 17-year-olds. By 2019, Snapchat was estimated to have over 17 million users under age 18, and 69% of 13-17 year old users nationwide were using the product.[13]

11.      Snap specifically targets its Snapchat product to teenage and young adult users. This targeting is so successful that Snap has publicly proclaimed that Snapchat is the "preferred platform for Gen Z,"[14] and Snap's CEO stated that he and his co-founder "were thrilled to hear that most of [Snapchat's users] were high school students."[15] According to the Pew Research Center, 55% of teens use Snapchat; 48% use it daily; and 13% report being on Snapchat "[a]lmost constantly."[16] Snap even claims to have an influence over what it calls the "Snapchat Generation" ("Gen Z"), asserting that its products changed the way young people connect and communicate going forward.[17]

---

[11] *Snapchat Surpasses 900 Million Monthly Active Users*, SNAP INC. (Apr. 29, 2025), https://newsroom.snap.com/q1-2025-monthly-active-users.

[12] *Q3 2022 Investor Presentation*, SNAP INC. (Oct. 2022), https://s25.q4cdn.com/442043304/files/doc_financials/2022/q3/Snap-Inc.-Q3-2022-Investor-Deck-(10.20.2022).pdf.

[13] *Snapchat Statistics 2020*, SMART INSIGHTS (Mar. 18, 2020), https://www.smartinsights.com/social-media-marketing/social-media-strategy/snapchat-statistics/.

[14] *Snapchat Ads*, SNAP INC. https://forbusiness.snapchat.com/?_sid=PAID&utm_campaign=US_G_Search_Brand_MKAGsnapchatads&utm_content=startsnapchatads&utm_medium=PAIDB2B&utm_source=GoogleSEM&utm_term=US&gclid=CjwKCAjw89jGBhB0EiwA2o1On9Cyz8hiqkwXnCDnRP8zc6oFeL9weE_UqxPF3yjLZx82CybDl2TfQhoCc1kQAvD_BwE.

[15]   Evan Spiegel, *Snapchat - Let's Chat,* SNAP INC. (Apr. 18, 2025), *https://perma.cc/AE97-TZ3L.*

[16] Michelle Faverio & Olivia Sidoti, *Teens, Social Media and Technology 2024,* PEW RSCH. CTR. (Dec. 12, 2024), https://www.pewresearch.org/internet/2024/12/12/teens-social-media-and-technology-2024/.

[17] *The Snapchat Generation; North America: Say Hello to the Snapchat Generation*, SNAP INC. (2021), https://downloads.ctfassets.net/inb32lme5009/30vuj5q8bEp9Tl36adWN86/0ba92cb714da2eeba3be032051b33dd7/The_Snapchat_Generation_North_America.pdf.

12.     Since its introduction, Snapchat has been widely known as the "sexting" app for teens. [18]  Indeed, Snap's CEO Evan Spiegel has publicly acknowledged that Snapchat had a reputation as a "sexting app."[19]  This is Snap's intent and is achieved through both the design and marketing of Snapchat.

13.     In 2012, shortly after its launch, the New York Times reported that, notwithstanding being designated for users as young as 12 years old, the Snapchat app in the Apple App Store was notably accompanied by images of "scantily clad women" along with a disclaimer of "mild sexual content or nudity."[20]

14.     Despite being aware of the myriad issues of sexual exploitation that children faced on its social media platform, including being hacked and catfished for CSAM,[21] Snap failed to implement safeguards on Snapchat that would meaningfully protect the privacy, safety, and security of its young users. Instead, its defectively designed security and privacy features allowed predators to target and hack into the Snapchat accounts of its minor users and obtain their private information and sensitive and/or explicit photos and videos. As a result, these children have been exploited in several ways, including through the dissemination of their private, explicit content as CSAM and child pornography. These children also have been targeted, harassed, threatened, and/or extorted regarding their private and/or explicit content. Such incidents have been widely reported

---

[18] Helen A.S. Popkin, *Bloody Teen Fight Over Sexting Won't Help Snapchat's Reputation*, NBC NEWS (Sept. 16, 2013 at 16:06 ET), https://www.nbcnews.com/technolog/bloody-teen-fight-over-sexting-wont-help-snapchats-reputation-8c11167242.

[19] *Talk at GS: Evan Spiegel, Co-Founder and CEO of Snap Inc.*, GOLDMAN SACHS (Sept. 18, 2019), https://www.goldmansachs.com/insights/talks-at-gs/evan-spiegel.html.

[20] Nick Bilton, *Disruptions: Indiscreet Photos, Glimpsed Then Gone*, N.Y. TIMES (May 6, 2012), https://archive.nytimes.com/bits.blogs.nytimes.com/2012/05/06/disruptions-indiscreet-photos-glimpsed-then-gone/?_r=0.

[21] *Our Transparency Report for the First Half of 2022*, SNAP INC. (Nov. 29, 2022), https://values.snap.com/news/our-transparency-report-first-half-2022?lang=en-US.  Catfishing involves a user pretending to be someone else to manipulate the user into sharing personal information or sexually explicit images.

and are known to Snap both through publicly available sources and Snap's own internal findings and research.

15.    Plaintiff Sophie Doe is one of those many young users grievously harmed by Snap's wrongful conduct. Sophie Doe and her mother, Nora Doe, bring this action for damages arising out of Sophie Doe's injuries caused by Snap, and for injunctive relief so that Snap's wrongful conduct does not continue to harm any more young people.[22]

## THE PARTIES

16.    Plaintiff Sophie Doe is a United States citizen and a resident of the State of New Hampshire.

17.    Plaintiff Nora Doe is a United States citizen and a resident of the State of New Hampshire.

18.    Defendant Snap Inc. is a Delaware corporation with its principal place of business in Santa Monica, CA.

19.    Snap owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes Snapchat, its social media platform. Snapchat is widely available to consumers throughout the United States.

20.    At all relevant times, Snap, including through its executives, collectively directed, controlled, had the authority to control, or participated in all aspects of the strategy, operation, planning, management, policies, design, and development of its social media platform, including in the acts and practices set forth in this Complaint.

---

[22] Contemporaneously with this Complaint, Plaintiffs have filed a motion to proceed under pseudonyms. The legal and factual authority contained in that motion supports Plaintiffs' proceeding under pseudonyms to protect the identity of Plaintiff Sophie Doe, who has been sexually exploited, threatened, and harassed since she was a child because of Defendant Snap's wrongdoing. Pursuant to L.R. 10.1, Plaintiffs have filed, under seal, a notice of intention to proceed by pseudonyms containing the true names of Plaintiff Sophie Doe and her mother, Plaintiff Nora Doe, with the Court. Pursuant to L.R. 10.1, Plaintiffs will serve both their notice and motion to proceed under pseudonyms upon Snap.

21.     At all times relevant hereto, Snap was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of Snap.

## JURISDICTION AND VENUE

22.     This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity among Plaintiffs and Defendant.

23.     This Court has personal jurisdiction over Defendant because Snap regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue for products and/or services provided to persons within the State of New Hampshire.

24.     Venue is proper in this Court under 28 U.S.C. § 1391 because the Plaintiffs reside in this District, Snap does business in this District, and because a substantial part of the events or omissions that gave rise to this Complaint occurred in this District.

## FACTUAL BACKGROUND AND ALLEGATIONS

25.     The ephemeral feature foundational to Snapchat, which allows its users to send and receive disappearing audiovisual messages,[23] foreseeably and quickly drove users, including minors, to create sexually explicit images with the platform or "Snaps." These Snaps are sometimes called "sexts," even though they are photos on Snapchat.

26.     Because of its brand identity among Millennials and Gen-Z as the original ephemeral-messaging app, Snapchat almost immediately became known as the "sexting" app—a

---

[23] Registration Statement, *supra* note 2 at 1.

8

fact Snap knew from public sources,[24] as well as its own internal research and findings, which explained that the ephemeral nature of Snaps encourages "inappropriate content and behavior by giving young people a false sense of privacy."

27.    Despite being aware that Snapchat provides young people a false sense of privacy, Snap not only failed to set the record straight to its users and the public, but it continued to develop and maintain products like My Eyes Only that further encouraged this misplaced sense of trust and reliance.

28.    When Snap designed My Eyes Only, it knew or should have known that My Eyes Only extended the false sense of security provided by the ephemerality feature of Snapchat to further encourage youth users to create and save sexually explicit and other sensitive content of themselves on their accounts, while keeping the content hidden from their parents. It also knew or should have known that this feature would be used to store potentially illegal material, including CSAM.[25] Indeed, My Eyes Only has been singled out by child safety advocates and law enforcement as a tool for facilitating CSAM.[26][27]

29.    Although Snap publicly declares that it actively works to combat child sexual exploitation and seeks to make its products safer for children, in truth, Snapchat is among the most prevalent sources of sexual exploitation of children. The entire premise of Snapchat's ephemeral photo-sharing encourages and fosters illicit sexual material involving children. The combination of My Eyes Only—which encourages young users to save and store their explicit Snaps on their

---

[24] Dickey, *supra* note 10; Gallagher, *supra* note 4 (describing an interview in which a journalist asked the CEO of Snap about the product's potential use for sexting).

[25] Salvador Rodriguez, *Snapchat Finally Acknowledges the Existence of Sexting With 'Memories'*, INC. (Jul. 6, 2016), https://www.inc.com/salvador-rodriguez/snapchat-memories-sexting.html.

[26] *National Center on Sexual Exploitation's Policy on Sharing Proof*, NAT'L CENTER ON SEXUAL EXPLOITATION (July 2023), https://endsexualexploitation.org/wp-content/uploads/Snapchat-Proof-Compilation_July-2023_DDL-2023.pdf.

[27] *Cybertip.ca Alert: Hacking Snapchat Accounts or Using the Threat of Hacking to Sextort Teens*, CYBERTIP!CA (Dec. 2021), https://cybertip.ca/en/online-harms/alerts/2021/hacking-snapchat-accounts/.

accounts—along with Snapchat's inadequate security features, makes the platform uniquely susceptible to predators and criminals who seek to sexually exploit and extort children.

30.    Since 2016, Snap has been named practically every year, including in 2026, in the National Center on Sexual Exploitation's ("NCOSE") Dirty Dozen List, which exposes twelve mainstream entities for facilitating or profiting from sexual abuse and exploitation.[28]

31.    The victimization and exploitation of children through Snapchat is commonplace and further illustrated by the volume of explicit images linked to Snapchat on the dark web. The New Mexico Department of Justice's investigation into Snapchat uncovered an ecosystem of sites dedicated to the non-consensual sharing of stolen, sexual images from Snapchat accounts, including those of underage minors. Rudimentary searches for "snapchat leaks" or "snapchat teens" confirm the existence of sexually-explicit images that are taken from Snapchat, despite the illusory safety of My Eyes Only and Snap's guarantees of Snapchat's safety and security. Results from these searches included links to instructions on how to break into Snapchat accounts, and long lists of links for CSAM and accounts sharing CSAM images and videos.

32.    One of these websites includes a comprehensive handbook for online sextortion that highlights the manner in which Snap's design and misrepresentations enabled predators to target Snapchat's youth users, blackmail them, and/or threaten them with their stolen sexual and/or explicit photos and content unless the victims meet specific demands.

---

[28] *The 2026 Dirty Dozen List: Mainstream Contributors to Sexual Exploitation*, NAT'L CENTER ON SEXUAL EXPLOITATION (2026), https://endsexualexploitation.org/dirty-dozen-list-2026/.

**PART FOUR: SEXTORTION STAGE**

Chapter 15 | Initiating Sextortion
Chapter 16 | Short-Term VS. Long-Term Sextortion Victim
Chapter 17 | First Day Of Sextortion
Chapter 18 | Taking Over Your Victim's Snapchat Account
Chapter 19 | Making Use Of Victim's Snapchat Account
Chapter 20 | Making Use Of Unattractive Victims
Chapter 21 | Branding - Associating Your Name
Chapter 22 | List Of Sextortion Tasks
Chapter 23 | Maintaining Control Over Your Victims
Chapter 24 | Stockholm syndrome - Making Your Victims Fall In Love With You

*(Figure 3)*

33.     The ominous reality stands in stark contrast to Snap's public pronouncements, where it claimed that Snapchat is a positive alternative to typical social media.[29]

34.     Snap knew, but failed to warn its users, of "rampant" and "massive" sextortion targeting "primarily teens and young adults" pervasive on online platforms like Snapchat.[30] According to its own research, Snap knew that hacking constituted 26% of these sextortion acts, which "involves an offender gaining unauthorized access to a target's devices or online accounts to steal intimate photos or personal information."[31]

35.     Additionally, in June 2023, Snap's Digital Well-Being Index ("DWBI") survey on Sexual Risks confirmed the dangers and risks of sextortion to its younger users. In that same survey, over half of Gen Z respondents indicated that they or a friend were targeted for catfishing. Of the respondents, 44% had actually shared information or images, and one quarter were threatened with or had their personal information or intimate images shared.[32]

---

[29] Jameson Fleming, *Super Bowl 58 Ad Tracker: Complete List of 2024 Super Bowl Commericals*, ADWEEK (Jan. 17, 2024), https://www.adweek.com/brand-marketing/super-bowl-58-ad-tracker-watch-all-the-teasers-and-spots/.
[30] *New Snap Research: Gen Z Remains Target for Online Sextortion, but Signs of Progress*, SNAP INC. (Oct. 29, 2024),  https://values.snap.com/news/new-sextortion-research-gen-z.
[31] *Id.*
[32] *Digital Well-Being Index Presentation*, SNAP INC. (June 2023), https://assets.ctfassets.net/kw9k15zxztrs/5YeLYk9Rzh2RTOGuGa37aq/09fcac523225cdfd955ab0e06f386ba7/Snap-__2023_Digital_Well-Being_Index_Wave_2_Report.pdf.

11

**51% of Gen Z: They or a friend targeted for catfishing**

Ever had interactions online with someone who was pretending to be someone they were not

How incidents unfolded...

Asked to share — 71% | Shared — 44% | Threatened — 26% | Acted — 24%

Base: Ages 13-24, who were catfished, me and or a friend, N=3076

49% No · 51% Yes

Yes · No

Base: Ages 13-24, N=6008

**Nearly half (47%) said it happened to me in past 3 mos.**

Q27_1-2: Have you or a friend ever had interactions online with someone who was pretending to be someone they were not?
Q27a: Did this person ever ask you or a friend to share any of the following?
Q27b: After being asked, did you or a friend ever share any of these things?
Q27c_1-2: Did this person ever threaten to release what you or a friend shared unless you did what they asked?
Q27e: What actions did you or a friend take in response to the threat?

***(Figure 4)***

36.    By November 2022, Snap employees were discussing 10,000 Snapchat user reports of sextortion each month, while acknowledging that these reports "likely represent a small fraction of this abuse" given the shame and other barriers to reporting. One month later, a Snap draft marketing brief discussed not wanting to "strik[e] fear" among its young users.

37.    Despite its recognition of the "staggering spike in 'sextortion' scams that deceive primarily teens and young adults into sharing intimate imagery that quickly turn into blackmail,"[33] and its own user reports of rampant sextortion on Snapchat, Snap nonetheless failed to meaningfully warn its young users or their parents about the extent of these risks. Instead, since it first introduced Snapchat, Snap has affirmatively represented that the app and its features are safe and appropriate for young users. As part of the intentional marketing of its app as safe, Snap assigns itself a "13+" rating in the Apple App Store and a "T for Teen" rating in the Google Play and Microsoft Stores. Consumers are presented with these age ratings when they download Snapchat on a smartphone. Despite the dangers its product presents to young people, Snap

---

[33]   *New Snap Research: Gen Z Remains Target for Online Sextortion, but Signs of Progress*, *supra* note 30.

continues to make such representations to ensure continued youth engagement with its products, which is integral to its bottom line.

38.     The primary tool that Snap uses to prevent underage children from accessing Snapchat is an "age gate," which refers to the practice of blocking access to features or content based on nothing more than a user's self-reported age.

39.     When a user signs up for a Snapchat account, they are prompted to input their birthdate, but Snap does not conduct any independent verification to ensure that young minors do not access the platform. The process relies on the user, whether a child or adult, accurately inputting their age. But this age-gating process has the opposite effect: it incentivizes children to input a false date of birth when registering. If, during the registration process, a child user enters an under-13 birth date and is rejected, Snap gives the child an unlimited number of future attempts to register again. This incentivizes submission of a 13 or older birth date.

40.     Snap knows how easy it is for under-13-year-olds to get on Snapchat, and that they often do. Thorn's comprehensive study showed that 40% of 9-12-year-olds use Snapchat once a day.[34] Nevertheless, Snap has not incorporated more robust age-gating elements into its product design.

41.     Snap does not typically charge users a fee for accessing its platform. Instead, it monetizes the data that Snap actively harvests from its users through the sale of targeted advertising. Snap's "targeted" advertising program allows advertisers to direct advertisements to consumers more precisely than would otherwise be possible using traditional media.[35] This arrangement has proved particularly lucrative for Snap. The company reported more than $4.606

---

[34] *Responding to Online Threats: Minors' Perspectives on Disclosing, Reporting, and Blocking: Findings from 2020 quantitative research among 9-17 year olds*, THORN at 12 (May 2021), https://info.thorn.org/hubfs/Research/Responding%20to%20Online%20Threats_2021-Full-Report.pdf *(emphasis added)*.
[35] *Why Snapchat Ads*, SNAP INC., https://forbusiness.snapchat.com/advertising/why-snapchat-ads.

billion in annual revenue in 2023, and $4.602 billion the year before.[36] As Snap's financials confirm, all or substantially all of this revenue is attributable to advertising and enhanced by its user-data-driven ability to target advertising.[37]

42.     Because Snap's business model depends upon the sale of customer data, it must attract a massive user base to its platform to generate its target revenue. In a September 2019 interview, Snap's CEO explained that its young users from the 13-34 year old demographic "is strategically a critical demographic… because I think they represent, really, the future." [38] Snap knowingly sought to maximize youth engagement by making platform choices that favor maximizing engagement over consumer safety. This targeting has been extremely successful, and Snapchat reaches 90 percent of the 13- to 24-year-old population in over twenty countries.[39] It chose to implement and maintain popular features such as My Eyes Only, while choosing not to implement safeguards and security features that would protect these children, to maximize profits. Snap and its CEO rejected repeated internal proposals and external pressures to take steps to meaningfully address the risk of harm their product caused and continued to pose to children.

43.     Snap has also complained internally that identifying and protecting its users from predatory actors would "create disproportionate admin costs," and should not be its responsibility. Snap employees pointed to a "case where an account had 75 different reports against it since Oct. '21," mentioning nudes, minors, and extortion, yet the account was still active.

44.     Snap shuns the basic technology widely used in its industry, including applying adequate encryption, to prevent or stop known privacy and security breaches, as well as sexual

---

[36] Snap Inc., Annual Report (Form 10-K) at 6 (Feb. 7, 2024).
[37] *Id.*
[38] *Talk at GS: Evan Spiegel, Co-Founder and CEO of Snap Inc.*, *supra* note 19.
[39] *Q3 2022 Investor Presentation, supra* note 12 at 6-7.

exploitation and CSAM.[40] Amnesty International has ranked Snapchat as one of the worst

technology platforms in meeting its human rights responsibilities by failing to use adequate

encryption to protect its users' online security.[41] Snap's refusal to implement adequate design

features that would protect its most vulnerable users from sexual exploitation and harm has allowed

it to earn significant profits.

45.    Plaintiffs do not seek to hold Snap liable as the publisher or speaker of any of the

third-party content described herein. Rather, Plaintiffs' claims against Snap are based on its

defective design, failure to warn, negligence, intentional and negligent infliction of emotional

distress, and deceptive and unfair business practices in designing and maintaining Snapchat in such

a manner as to cause exploitation and other foreseeable harms to its users, including Plaintiff

Sophie Doe.

### PLAINTIFF-SPECIFIC BACKGROUND AND ALLEGATIONS

46.    Sophie Doe is 19 years old. At all times relevant and material to this Complaint,

Plaintiff Sophie Doe resided in New Hampshire.

47.    In 2017, she created a Snapchat account while she was living in New Hampshire.

Despite being 11 years old and under the required age to use Snapchat, Sophie Doe was able to

easily download and create an account.

48.    In approximately 2018, Plaintiff Sophie Doe, while living in New Hampshire, began

using Snapchat's My Eyes Only. At that time, she was 11 or 12 years old.

49.    Based on the name of "My Eyes Only" and the way Snap represented My Eyes Only

to its users, Sophie Doe believed My Eyes Only fully protected her privacy and would be a secure

---

[40] *For Your Eyes Only?,* AMNESTY INT'L (Oct. 2016), https://www.amnesty.org/en/wp-content/uploads/2021/05/POL404985 2016ENGLISH.pdf.
[41] *Id.* at 4.

place to save her "Snaps." Accordingly, Sophie Doe began to save almost all of her Snaps, including nude and sexually explicit images of herself, on My Eyes Only. Sophie Doe would not have created and/or saved nude and sexually explicit material on Snapchat if it were not for Snap's representations that My Eyes Only was private, safe, and accessible only to her.

50.     On March 28, 2021, Sophie Doe went on Snapchat only to find that she was somehow logged out of her account. Her attempts to log back in with her password were unsuccessful. A moment later, Sophie Doe received a text message on her phone purportedly from "Snapchat," stating that it detected "unusual activity" on her account and that a login attempt was made near a location close to where she was. "Snapchat" stated that it temporarily locked her account to protect her privacy, and that she would need to unlock her account by responding with "the 4-digit PIN associated with the account," which "Snapchat" further explained was also used for her My Eyes Only.

> Uh oh! Snapchat has detected unusual activity on your account, ▓▓▓▓▓▓ A login attempt was made near Andover, MA at 13:41:52 CST 28th March 2021. We have temporarily locked your account to protect your privacy. To unlock your account, please respond with the 4-digit PIN associated with the account. This is often made during account activation or used for My Eyes Only.
>
> Team Snapchat

*(Figure 6)*

51.     Sophie Doe, who was 14 years old at the time, believed that the text message was from Snapchat and sent over her My Eyes Only PIN to regain access to her account. She was soon able to log back onto Snapchat.

52.     Several weeks after this incident, another user added her on Snapchat. When she added him back, the user stated that he had purchased her nude photographs from a man on another platform called Discord. This Snapchat user then proceeded to threaten and extort Sophie Doe for more nude content as a condition for deleting the nude photos of her that he already had. Because Sophie Doe had only ever stored her nude and/or sexually explicit photographs on her My Eyes Only, she began to piece together that this was connected to the incident from March 28, 2021, and that both her Snapchat account and My Eyes Only had been hacked into on that date.

53.     Soon after that conversation, Sophie Doe received a sudden and large influx of more than 60 other unknown users adding her on Snapchat, which was very unusual for her account. Since approximately March 2021, Sophie Doe has received hundreds of unwanted contacts, including through Snapchat, text message, Instagram, email, phone calls, Telegram, and other platforms. These individuals would often send Sophie Doe messages containing nude and/or explicit photos that were taken from her My Eyes Only. Many of these individuals attempted to extort Sophie Doe by threatening to leak her nude and sexually explicit photos if she did not send them more, including threatening to send her photos to her parents and provided her parents' contact information to further intimidate her. Several of Sophie Doe's childhood friends and/or classmates were contacted by Snapchat users who threatened to release Sophie Doe's nude and sexually explicit photographs if she did not "add" those Snapchat users back on the app or if those classmates did not send over their own nude photos. At least one of these childhood friends and/or classmates was sent Sophie Doe's nude and/or sexually explicit photos obtained from her My Eyes Only.

17

54.     Sophie Doe later learned that those individuals were only able to contact her and her family, friends, and classmates because the perpetrator who hacked into her Snapchat account in 2021 was able to screenshot her personal information saved in her account settings, including her email, phone number, and birthdate. This information was later sold and/or disseminated along with her nude and/or sexually explicit photos.

55.     As a 14-year-old child, Sophie Doe was terrified by the sudden bombardment of threats, sextortion attempts, and unwanted contacts from predators and strangers. Worried that she would get into legal trouble for her own underage nude and/or sexually explicit photos, even though she was not the person who had circulated or distributed them, she did not tell her parents or any other adults about what was happening. The fact that her most private photos, including her sexually explicit and nude photos, were being viewed and sold by strangers, as well as the constant threats and extortion attempts she faced regarding these stolen photos, caused her to feel immense shame, embarrassment, and fear. All of these feelings greatly overwhelmed and distressed Sophie Doe, and further prevented her from telling her parents and seeking outside support. Instead, she largely kept what was happening to her a secret for approximately the next four years, shouldering this horrific burden on her own. Keeping this secret took a tremendous emotional and physical toll on Sophie Doe, who became severely depressed, anxious, and traumatized by the constant threats and unwanted contacts from strangers, predators, and others who repeatedly threatened her with her My Eyes Only pictures. Her depression was so severe that she began to self-harm. Sophie Doe experienced suicidal ideation, necessitating hospitalization. As a result of her depression, anxiety, and trauma, Sophie Doe's academic performance suffered greatly, and she was unable to attend school during especially severe periods of depression. This caused her to repeat her sophomore year of high school and affected her overall grades and ability to get into the colleges of her choice.

18

56.     On approximately March 31, 2025, Sophie Doe received a call from Ohio police who told her they found her pictures while investigating a case involving another victim who had experienced similar harassment. On that same day, the FBI contacted Sophie Doe's mother, Nora Doe, and informed her that the perpetrator who hacked into Sophie Doe's Snapchat account in 2021 and distributed her nude and sexually explicit photos was in jail. This was when Nora Doe first became aware of what had been happening to her daughter. On April 28, 2026, the perpetrator, Andrew Venegas, was sentenced to 30 years in federal prison for sexually exploiting Sophie Doe and other minors and for receiving and possessing child pornography.[42,43]

57.     Despite the arrest and subsequent detention of Andrew Venegas, Sophie Doe and her family members have continued to receive threats, extortion attempts, and/or unwanted contact in connection with Sophie Doe's My Eyes Only content. This is a direct result of Snap's failure to safeguard the privacy, identity, and content of its My Eyes Only users, including Sophie Doe. Although Sophie Doe took steps to block the phone numbers that contacted her, and reported the Snapchat and other social media accounts that contacted and/or extorted her, she has continued to receive ongoing unwanted contacts and threats in 2026.

58.     Additionally, since at least 2021, Sophie Doe's sexually explicit underage content from her My Eyes Only and her personally identifiable information from her Snapchat account have circulated on various websites, including illicit websites that publish, circulate, and/or sell CSAM and child pornography. These websites included both sexually explicit and/or nude photos of Sophie Doe, bundled together with non-explicit and non-nude photos that showed her face, thus allowing predators and strangers to better identify and contact her. These photos were sometimes

---

[42] Rebekah Riess, *A Houston-area Man has been Federally Charged in a Social Media Sextortion Scheme of Minors*, CNN (Jul. 15, 2023), https://www.cnn.com/2023/07/15/us/houston-social-media-sextortion-minors-arrest.
[43] *United States v. Venegas*, No. 4:23-cr-00346 (S.D. Tex. Aug. 9, 2023), https://www.courtlistener.com/docket/67681421/united-states-v-venegas/.

accompanied by her contact information or other personal details that were obtained from her Snapchat profile settings at the time her account was hacked in 2021.

59.     Plaintiff Sophie Doe was lured and deceived by Snap's misrepresentations of the privacy and security of Snapchat and My Eyes Only into saving nude and sexually explicit underage photos in her My Eyes Only. Sophie Doe would never have created and/or saved such photos absent Snap's explicit representations and marketing that Snapchat and My Eyes Only were safe and private, or if Snap had warned her against the dangers and risks its products posed to her.

## CAUSES OF ACTION

### COUNT I
### *Strict Products Liability*
### *(Defective Design)*

60.     Plaintiffs re-allege and incorporate by reference the allegations contained in this Complaint.

61.     Snapchat and its features, including My Eyes Only, are products, and Snap is in the business of, and generates a profit from, supplying Snapchat and its features to consumers.

62.     Snap consistently refers to Snapchat and its features as "products." [44]



*(Figure 7)*

---

[44] *Snap Inc.*, SNAP INC. (Sept. 24, 2016), https://newsroom.snap.com/snap-inc.

63.     Snap profits from young people's use of its products. Its profits increase as more young users engage with its products.

64.     Children under 18 years old are intended users and a targeted, key demographic for Snapchat.

65.     As memorialized in the contracts Snap enters into with Snapchat users, Snap sells the use of Snapchat to users in exchange for users' data, time, and attention to advertising messages.[45,46]

66.     Snap is engaged in the business of designing, developing, programming, marketing, distributing, and profiting from Snapchat and its features.

67.     Snap has complete control over the design of Snapchat.

68.     Snapchat contains defective conditions and is fundamentally unsafe and unreasonably dangerous, especially for children. The use of Snap's products, including Snapchat and the My Eyes Only feature, by children and the exploitation of those children were reasonably foreseeable by Snap.

69.     A key demographic of Snapchat's users is children under 18-years old, and Snap specifically targets the marketing of its products toward children.

70.     Snapchat's defects are particularly dangerous when used by children. Snap intentionally designed My Eyes Only to encourage its youth users to create and store sensitive and/or sexually explicit content on their Snapchat accounts. Yet Snap defectively designed the privacy and security settings within Snapchat to allow predators to bypass its security settings to target and hack into the Snapchat accounts of its users, including youth, and obtain their private

---

[45]*Snap Inc. Terms of Service*, SNAP INC. (Apr. 7, 2025), https://www.snap.com/terms#inc-terms.

[46] *Snap Values: Privacy Policy*, SNAP INC. (Apr. 7, 2025), https://values.snap.com/privacy/privacy-policy?lang=en-US.

information and sensitive and/or sexually explicit photos saved on My Eyes Only. These unreasonably dangerous conditions existed when Snapchat was sold to consumers, including Sophie Doe.

71.    Snapchat and My Eyes Only were defective at the time the products were sold and reached users, including Sophie Doe, without a substantial change in the defective conditions.

72.    Plaintiff Sophie Doe was one of those children who used Snap's defectively designed products. The unreasonably dangerous conditions caused or substantially caused her injuries, including severe psychological and other harms, as alleged throughout this Complaint.

73.    Additionally, Snapchat is defectively designed because it failed to perform as safely as an ordinary consumer or user would reasonably expect when put to its foreseeable or intended use. The purpose and manner of Plaintiff Sophie Doe's use of Snapchat and My Eyes Only was intended and/or reasonably foreseeable by Snap.

74.    Snapchat and its My Eyes Only feature are defective because their privacy and security risks outweigh their benefits. The foreseeable risks of harm could have been reduced or avoided by adopting reasonable alternative designs that would not have diminished any benefits of Snapchat, whereas omitting the alternative designs renders Snapchat unreasonably dangerous.

75.    Snap could have feasibly made Snapchat less dangerous by modifying or omitting harmful features like My Eyes Only and/or by modifying Snapchat's privacy and security features to safeguard the accounts of its youth users. Those design features could be modified without substantially affecting Snapchat's cost or effectiveness.

76.    Snap's defective design of Snapchat and My Eyes Only caused children and young people, including Plaintiff Sophie Doe, serious harm, as set forth throughout this Complaint.

77.    As a result of Snap's conduct, Plaintiff Sophie Doe sustained tremendous damages, including, without limitation: physical and emotional pain and suffering, severe emotional distress,

loss of educational and career opportunities, medical expenses, economic injuries, and other losses. Plaintiff Nora Doe also sustained damages, including medical and other expenses paid as a consequence of Sophie Doe's injuries.

78.    Snap's conduct, including its actions, inactions, and omissions, was wanton, malicious, and/or oppressive, warranting enhanced damages.

79.    WHEREFORE, Plaintiffs seek all relief to which they are entitled under the law, including compensatory damages, enhanced damages, and equitable relief, including an injunction, and any other relief the court deems necessary and proper.

### COUNT II
### *Strict Products Liability*
### *(Failure to Warn)*

80.    Plaintiffs re-allege and incorporate by reference the allegations contained in this Complaint.

81.    Snapchat and its features, including My Eyes Only, are defective products because the instructions and warnings supplied by Snap are inadequate and not sufficiently understandable to warn users, including children, of the substantial dangers of Snapchat.

82.    Snapchat, including its My Eyes Only design feature, is more dangerous than an ordinary user, with ordinary knowledge available in the community, would anticipate.

83.    While Snap knew of and/or could reasonably foresee the risks of these products, the existence and magnitude of these risks are not readily apparent and not reasonably known to ordinary users, especially ordinary child users. A key demographic of Snapchat's users is children under 18-years old, and Snap specifically targets the marketing of its products toward children and allows children to use its products. Snapchat is particularly dangerous and defective when placed in

the hands of children. Moreover, Snapchat and its features, including My Eyes Only, are not obviously inherently dangerous.

84.     The foreseeable harms could have been reduced or avoided if Snap provided its users reasonable instructions or warnings about the risks of creating and saving nude pictures and other sexually explicit content on their Snapchat accounts or otherwise provided guidance that would have aided child users; that Snap's ephemeral messages contribute to the widespread nonconsensual distribution of CSAM and sexual exploitation of its child users; that My Eyes Only is not a secure product where its youth users can safely store nude and/or sexually explicit content that they would not want others to be able to access; that Snapchat can be easily hacked into and used to obtain, download, and disseminate personal and private content, including content that the user did not share and only saved in their My Eyes Only; and that Snap shuns the basic technology widely used in its industry to prevent or stop known privacy and security breaches as well as sexual exploitation and CSAM. If Snapchat had contained or been accompanied by such warnings, Plaintiff Sophie Doe would never have created and stored nude and sexually explicit content on her Snapchat account.

85.     The omission of those instructions or warnings renders Snapchat not reasonably safe.

86.     Snap's failure to warn of the risks associated with the use of Snapchat and My Eyes Only has caused children, including Plaintiff Sophie Doe, serious harm, as set forth throughout this Complaint. Snapchat has negatively impacted the privacy and safety of its child users and exposed these children, including Plaintiff Sophie Doe, to sexual exploitation and extortion.

87.     As a result of Snap's conduct, Plaintiff Sophie Doe sustained tremendous damages, including, without limitation: physical and emotional pain and suffering, severe emotional distress, loss of educational and career opportunities, medical expenses, economic injuries, and other losses.

24

Plaintiff Nora Doe also sustained damages, including medical and other expenses paid as a consequence of Sophie Doe's injuries.

88. Snap's conduct, including its actions, inactions, and omissions, was wanton, malicious, and/or oppressive, warranting enhanced damages.

89. WHEREFORE, Plaintiffs seek all relief to which they are entitled under the law, including compensatory damages, enhanced damages, and equitable relief, including an injunction, and any other relief the court deems necessary and proper.

### COUNT III
### *Negligence*

90. Plaintiffs re-allege and incorporate by reference the allegations contained in this Complaint.

91. Snap has a duty to exercise reasonable care in the design, manufacture, marketing, distribution, and labeling of Snapchat and its features and to make Snapchat reasonably safe for all foreseeable users. Children are intended and foreseeable users of Snapchat.

92. Snap breached that duty by (1) negligently designing My Eyes Only and Snapchat's security features, which allowed predators to target, exploit, and threaten children; (2) negligently failing to warn children and their parents of the likelihood and extent of the reasonably foreseeable risks and dangers of using Snapchat and its features, and (3) by negligently marketing My Eyes Only—including through the very name of the feature—to misrepresent the safety and security of Snapchat to children and their parents.

93. Snap intentionally targeted and marketed Snapchat to youth. Snap did so by making explicit and implicit representations and guarantees about the safety and privacy of Snapchat and its features, including My Eyes Only, that it knew or should have known were not true, including because they were readily contradicted by Snap's own internal findings and research. Snap's

targeting and marketing to youth lured children and teens to create and/or save sexually explicit and other private content on Snapchat that they otherwise would not have. Snap also failed to design and implement adequate safety and security features to protect its young users and their private photos. This resulted in the sexual exploitation of its users, including Plaintiff Sophie Doe, and the dissemination of CSAM.

94.     At the same time that it was implementing defective and negligent design decisions that made its products harmful to youth, Snap was publicly making misrepresentations and statements omitting material information that was intended to assure children and their parents that Snapchat was safe and appropriate for children, while failing to disclose the evidence of the risks and serious harms that it knew its young users suffered. Each of these statements and omissions painted a misleading and untrue picture of the safety of Snapchat and was made to promote and increase the use of Snapchat, including among youth.

95.     Snap has engaged in multiple unfair and deceptive acts and practices that duped young users, their families, its own advertisers, and the public regarding the safety of its products and Snap's efforts in prioritizing child safety. Snap engaged in misrepresentations, omissions, and/or active concealment to advertisers, news media, and the general public, that falsely and misleadingly asserted, *inter alia*, that: Snapchat is safer or somehow different in kind than other platforms, when it is not; that Snap took into account the unique sensitives and considerations of minors when it designed and chose to maintain these unsafe designs of its products, when in fact Snap ignored such concerns; Snapchat and its features, including My Eyes Only, are safe for young users while concealing Snap's internal research showing the high frequency at which young users experienced harms from their use of its products.

26

96.     Snap's failure to disclose the risks and harmful effects of its products was misleading, particularly in light of its affirmative statements about the safety of Snapchat and its features like My Eyes Only.

97.     Snap's negligence is both the proximate and actual cause of harm to Sophie Doe.

98.     As a result of Snap's conduct, Plaintiff Sophie Doe sustained tremendous damages, including, without limitation: physical and emotional pain and suffering, severe emotional distress, loss of educational and career opportunities, medical expenses, economic injuries, and other losses. Plaintiff Nora Doe also sustained damages, including medical and other expenses paid as a consequence of Sophie Doe's injuries.

99.     Snap's conduct, including its actions, inactions, and omissions, was wanton, malicious, and/or oppressive, warranting enhanced damages.

100.    WHEREFORE, Plaintiffs seek all relief to which they are entitled under the law, including compensatory damages, enhanced damages, and equitable relief, including an injunction, and any other relief the court deems necessary and proper.

### COUNT IV
### *Intentional Infliction of Emotional Distress*

101.    Plaintiffs re-allege and incorporate by reference the allegations contained in this Complaint.

102.    Snap, by extreme and outrageous conduct, intentionally and/or recklessly caused severe emotional distress to Plaintiff Sophie Doe by defectively designing, promoting and selling its Snapchat and My Eyes Only products to her without privacy and security features that would safeguard her from sexual exploitation and sextortion; failing to warn her about the dangers of its products or the risks they posed to her safety and wellbeing; and falsely, inaccurately, and deceptively marketing and representing its products to her.

27

103.    Snap acted intentionally and/or recklessly in its design, marketing, and promotion of Snapchat and My Eyes Only despite knowing that they were unreasonably dangerous products. Snap intentionally designed, marketed, and promoted Snapchat and My Eyes Only despite knowing of the harms and risks to its young users. Snap recklessly engaged in its harmful conduct by consciously disregarding its knowledge of the substantial and unjustifiable risks of Snapchat and My Eyes Only, and that conscious disregard constitutes a gross departure from the care that a reasonable person would exercise in the same or similar circumstances.

104.    Snap's acts were extreme and outrageous in light of its knowledge about the dangers posed to the privacy and security of its youth users inherent in the design of Snapchat and My Eyes Only. Snap failed to deviate from its course of action in the sole interest of making money. This conduct exceeded all possible bounds of decency and was a complete denial of Plaintiff Sophie Doe's personal dignity as a young person and a Snapchat user.

105.    As a result of Snap's conduct, Plaintiff Sophie Doe sustained tremendous damages, including, without limitation: physical and emotional pain and suffering, severe emotional distress, loss of educational and career opportunities, medical expenses, economic injuries, and other losses. Plaintiff Nora Doe also sustained damages, including medical and other expenses paid as a consequence of Sophie Doe's injuries.

106.    Snap's conduct, including its actions, inactions, and omissions, was wanton, malicious, and/or oppressive, warranting enhanced damages.

107.    WHEREFORE, Plaintiffs seek all relief to which they are entitled under the law, including compensatory damages, enhanced damages, and equitable relief, including an injunction, and any other relief the court deems necessary and proper.

## COUNT V
### *Negligent Infliction of Emotional Distress*

108. Plaintiffs re-allege and incorporate by reference the allegations contained in this Complaint.

109. Snap owed a duty of care to protect Sophie Doe's privacy and security while she was using its products.

110. Snap breached its duty of care to Sophie Doe in failing to design safe products for its users, including children; failing to warn its youth users about the risks and dangers of its products despite Snap's knowledge and awareness of these risks and dangers; and failing to accurately market and represent its products.

111. Snap's breach of its duty created an unreasonable risk. This risk enabled predators to obtain unauthorized access to Sophie Doe's Snapchat account, which resulted in her being the victim of sexual exploitation, extortion, blackmail, and child pornography.

112. As a direct and foreseeable consequence of Snap's negligence, Sophie Doe sustained tremendous damages, including, without limitation: physical and emotional pain and suffering, severe emotional distress, loss of educational and career opportunities, medical expenses, economic injuries, and other direct and consequential damages. Plaintiff Nora Doe also sustained damages, including medical and other expenses paid as a consequence of Sophie Doe's injuries.

113. Sophie Doe's emotional distress was severe, and it manifested itself through physical symptoms, including but not limited to: sweating, rapid breathing, accelerated heartbeat, crying, chronic fatigue and physical exhaustion, irregular sleeping patterns, autoimmune-related issues, and severe depression and anxiety leading to suicidal ideation, hospitalization, and physical self-harm.

114. Snap's conduct, including its actions, inactions, and omissions, was wanton, malicious, and/or oppressive, warranting enhanced damages.

115. WHEREFORE, Plaintiffs seek all relief to which they are entitled under the law, including compensatory damages, enhanced damages, and equitable relief, including an injunction, and any other relief as the court deems necessary and proper.

### COUNT VI
### Violation of New Hampshire's Consumer Protection Act
### N.H. Rev. Stat. Ann. § 358-A:2 & 10

116. Plaintiffs re-allege and incorporate by reference the allegations contained in this Complaint.

117. The New Hampshire Consumer Protection Act ("CPA") provides that it is unlawful for any person to use any unfair method of competition or any deceptive act or practice in the conduct of any trade or commerce within the State of New Hampshire.

118. Snap has violated the CPA by engaging in unlawful, unfair, and deceptive business acts and practices, and engaging in unfair, deceptive, untrue, and/or misleading marketing. Snap's acts and practices were a willful or knowing violation and were a direct and proximate cause of Plaintiffs' injuries.

119. Snap's design decisions and refusal to address glaring safety defects have engineered and amplified a social media platform ripe for abuse and rampant with illicit content and activity. Snap may publicly claim that Snapchat is different from and safer than other social media, but those claims are false and knowingly so. Snap's conduct is unfair and deceptive.

120. Snap intentionally targeted and marketed Snapchat to youth. Snap did so by making explicit and implicit representations and guarantees about the safety and privacy of Snapchat and its features, including My Eyes Only, that it knew or should have known were not true, including

because they were readily contradicted by Snap's own internal findings and research. Snap's targeting and marketing to youth lured children and teens to create and/or save sexually explicit and other private content on Snapchat that they otherwise would not have. Snap also failed to design and implement adequate safety and security features to protect its young users and their private photos. This resulted in the sexual exploitation of its users, including Plaintiff Sophie Doe, and the dissemination of CSAM.

121.    Snap's conduct constitutes an unlawful, unfair, and deceptive business act and practice, and unfair, deceptive, untrue, or misleading advertising. These practices include, but are not limited to, misleading and deceptive statements in promoting its products as set forth above and in its privacy policies and community guidelines.

122.    Snap's deceptive, false, and misleading statements were made to attract more users to Snapchat, to give those consumers a false sense of safety, and to induce users to rely on and trust Snap into believing Snap would protect its users if the app was put to ill use.

123.    At the same time that it was implementing defective design decisions that made its products harmful to youth, Snap was publicly making misrepresentations and statements omitting material information intended to assure children and their parents that Snapchat was safe and appropriate for children, while failing to disclose the evidence of the risks and serious harms that it knew its young users suffered. Each of these statements and omissions painted a misleading and untrue picture of the safety of Snapchat and was made to promote and increase the use of Snapchat, including among youth.

124.    Snap's conduct, as alleged in the foregoing paragraphs, violated the CPA because Snap knowingly made numerous oral or written statements or representations in connection with its products that were false and/or misleading.

125.    In numerous instances, Snap's public statements and communications knowingly misrepresented, directly or indirectly, expressly or by implication, that its products were safe for minors, while concealing and/or misrepresenting its internal knowledge that the frequency and extent of harms encountered by young users were far more pervasive than Snap's public statements revealed.

126.    Specifically, Snap has willfully, knowingly, recklessly, and repeatedly violated the CPA by engaging in multiple unfair and deceptive acts and practices that duped young users, their families, its own advertisers, and the public regarding the safety of its products and Snap's efforts in prioritizing child safety. Snap engaged in misrepresentations, omissions, and/or active concealment to advertisers, news media, and the general public, that falsely and misleadingly asserted, *inter alia*, that: Snapchat is safer or somehow different in kind than other platforms, when it is not; that Snap took into account the unique sensitives and considerations of minors when it designed and chose to maintain these unsafe designs of its products, when in fact Snap ignored such concerns; Snapchat and its features, including My Eyes Only, are safe for young users while concealing Snap's internal research showing the high frequency at which young users experienced harms from their use of its products.

127.    Snap also failed to disclose the risks and harmful effects of its products, which were misleading, particularly in light of its affirmative statements about the safety of Snapchat and its features like My Eyes Only.

128.    As a direct and proximate result of Snap's unfair and deceptive acts, Plaintiff Sophie Doe sustained tremendous damages, including, without limitation: physical and emotional pain and suffering, severe emotional distress, loss of educational and career opportunities, medical expenses, economic injuries, and other direct and consequential damages. Plaintiff Nora Doe also sustained damages, including medical and other expenses paid as a consequence of Sophie Doe's injuries.

129.    Snap's conduct, including its actions, inactions, and omissions, was wanton, malicious, and/or oppressive, warranting enhanced damages.

130.    WHEREFORE, Plaintiffs seek all relief to which they are entitled under the CPA, including statutory damages, actual damages, multiple damages, attorney's fees and costs, equitable relief, including an injunction, and any other relief the court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant Snap for relief as follows:

1. Past, present and future general damages, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial, to reasonably compensate Plaintiffs for injuries sustained as a result of Snap's conduct, including, but not limited to: physical and emotional pain and suffering, including physical pain, discomfort, fears, anxiety, mental and emotional distress, and loss of enjoyment of life.

2. Past, present, and future economic and special damages according to proof at the time of trial.

3. Medical expenses, past and future, according to proof at the time of trial.

4. Other expenses related to increased security and privacy measures and actions taken to combat the dissemination of Plaintiff Sophie Doe's personal information and personal content that was taken from Snapchat, including CSAM.

5. Enhanced damages according to proof at the time of trial.

6.  All legal costs and expenses, including reasonable attorneys' fees, as permitted by law.

7. Pre-judgment and post-judgment interest.

8.  Injunctive relief, including, but not limited to, ordering Snap to stop the harmful conduct alleged herein; remedy the unreasonably dangerous features in its Snapchat product; provide adequate warnings to its users that its products pose a clear and present danger, and prevent future violations of state law, including by ordering Snap to do each of the following:

   a.  Implement reasonable mechanisms to enforce other user safety-related terms, including creation of reporting vehicles (mail, email, and phone) with adequate staffing and available to all persons to report violations of Snap's terms of use and other abuses of the Snapchat product in a manner that is harmful to its users, including exploitation, privacy violations, and other harms perpetrated via the Snapchat product.

   b.  Institute meaningful safeguards and protections for children against sextortion and exploitation.

   c.  Stop programming and utilizing product features and technologies that maximize engagement type metrics over user safety.

9.  Such further relief as the Court deems just and proper.

Date: July 21, 2026

For the Plaintiffs,

***/s/ Mark Gottlieb***
Mark Gottlieb
NH Bar # 276441
Public Health Advocacy Institute
360 Huntington Ave, Suite 117CU
Boston, MA 02115
617-373-8487
mark@phai.org

Andrew A. Rainer (MA Bar #542067)
(*Pro Hac Vice forthcoming*)
Meredith K. Lever (MA Bar #542067)
(*Pro Hac Vice forthcoming*)
ShanShan Guo (MA Bar # #691953)
(*Pro Hac Vice forthcoming*)
Public Health Advocacy Institute
360 Huntington Ave. Suite 117CU
Boston, MA 02115
(617) 419-0418
arainer@phaionline.org
meredith@phaionline.org
sguo@phaionline.org